UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. FREEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>SUMMIT FILTRATION TECHNOLOGY, LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-06838-JSC<br><br>**ORDER RE: PARTIAL MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TRANSFER VENUE**<br><br>Re: Dkt. No. 19 |

Before the Court is Defendants' partial motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue.[1] (Dkt. No. 19.)[2] After carefully considering the parties' briefing, and having had the benefit of oral argument on November 18, 2021, the Court DENIES the motion to dismiss for lack of personal jurisdiction and declines to transfer venue.

## BACKGROUND

**I.   Complaint Allegations**

Plaintiff is a former employee and former member of Summit Filtration Technology, LLC ("Summit"), which he sues along with its owner and managing member Stanley E. Kieffer.[3] (Dkt. No. 8 ¶ 1.) Plaintiff originally filed in Alameda County Superior Court and Defendants removed to federal court on the basis of diversity jurisdiction. (Dkt. No. 1.) Plaintiff then filed the operative First Amended Complaint ("FAC"), the gravamen of which is that Defendants withheld

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7, 11.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] Plaintiff's original complaint also named Peak Partnership, LLC, but the operative First Amended Complaint does not. (Dkt. No. 8 ¶ 5; *see* Dkt. No. 20 at 7.)

his wages and other monies in an attempt to pressure Plaintiff to buy out Mr. Kieffer's majority interest in Summit. (Dkt. No. 8 ¶¶ 3–4, 38–47, 52–61.) Plaintiff brings claims under the laws of California and Wisconsin. (*Id.* ¶¶ 62–119.)

Mr. Kieffer, a citizen of Wisconsin, founded Summit in 2001 and served as its sole member. (*Id.* ¶¶ 8–9, 20.) In 2006, Summit hired Plaintiff as a W-2 employee. (*Id.* ¶ 21.) In 2007, Plaintiff became a member of Summit; he owned a 40% stake and Mr. Kieffer retained a 60% majority stake. (*Id.* ¶¶ 23, 25–26.) By 2013, Plaintiff had moved to California and become a California citizen. (*Id.* ¶¶ 29, 7.) That year, Plaintiff and Mr. Kieffer executed the "True-Up Agreement," which provided that they would earn equal compensation from Summit through different percentages of profits and W-2 wages, allowing Plaintiff to retain 40% control and Mr. Kieffer to retain 60%. (*Id.* ¶¶ 29–30.) Plaintiff was compensated pursuant to the True-Up Agreement from 2013 through 2019. (*Id.* ¶ 32.)

In 2020, Mr. Kieffer wanted to sell his 60% stake in Summit. (*Id.* ¶ 38.) Mr. Kieffer discussed selling to Plaintiff, but they did not reach an agreement. (*Id.* ¶ 39.) Thereafter, Mr. Kieffer caused Summit to withhold Plaintiff's 2020 wages in order to "strong-arm [Plaintiff] into paying an exorbitant price" and "artificially inflat[e] the value of Summit to make [Mr. Kieffer's] majority interest look more valuable to potential third-party purchasers in the event he could not come to terms with [Plaintiff]." (*Id.* ¶¶ 3, 41.) On April 2, 2021, Plaintiff resigned from employment with Summit and dissociated his membership, leaving Mr. Kieffer the sole member of Summit. (*Id.* ¶¶ 53–55, 9.) Mr. Kieffer caused Summit to not pay out Plaintiff's membership distribution. (*Id.* ¶¶ 4, 56–57.) Plaintiff contends he is owed at least $200,000 in wages and $1,666,666.67 in profit distributions. (*Id.* ¶¶ 47, 66, 87, 95, 102, 106, 112.)

II. **Mr. Kieffer's Affidavit**

In an affidavit supporting Defendants' motion, Mr. Kieffer attests that he is a citizen of Wisconsin and has never been a citizen of or owned property in California. (Dkt. No. 19-2 ¶¶ 4–6.) According to Mr. Kieffer, Plaintiff lived in Illinois at the time of his hire in 2007. (*Id.* ¶ 10.) Plaintiff traveled to Wisconsin frequently as part of his work for Summit. (*Id.*) Plaintiff "requested that Summit allow him to move to California because his wife's employer requested

2

that she move to California." (*Id.* ¶ 13.) With Summit's approval, Plaintiff moved to California in 2012, and continued to communicate extensively with Mr. Kieffer and Summit staff in Wisconsin. (*Id.* ¶¶ 13–15; *see* Dkt. No. 24-1 ¶¶ 2–5.)

### III. Plaintiff's Affidavit

In an affidavit supporting his opposition to Defendants' motion, Plaintiff disputes Mr. Kieffer's declaration. (Dkt. No. 20-1.) According to Plaintiff, he did not request permission to move, but rather "told Mr. Kieffer of my family's intention to relocate and discussed with him the possible effects of the move with regard to Summit's business and operations. Mr. Kieffer did not oppose my move to California. To the contrary, with Mr. Kieffer's blessing, Summit took advantage of my move and began advertising that Summit now had a formal business presence in California." (*Id.*) Plaintiff submits an Illinois K-1-P tax form showing his address in Pleasanton, California as of December 2012. (*Id.* at 8.)

## DISCUSSION

Defendants move to dismiss Mr. Kieffer for lack of personal jurisdiction or, alternatively, to transfer the case to the Eastern District of Wisconsin. Defendants conceded at oral argument that the Court has personal jurisdiction over Summit. Summit was a citizen of California from at 2013 to April 2, 2021, because Plaintiff was a member of Summit and a citizen of California. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

### I. Dismissal Under Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). Moreover, "for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Thus, "[c]onflicts

3

between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

In diversity jurisdiction cases, federal courts apply the law of the forum state to determine whether they may exercise personal jurisdiction over foreign parties. *See Harris Rutsky*, 328 F.3d at 1129. "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. Hence, we need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Id.* (internal quotation marks and citations omitted).

Plaintiff asserts that the Court may exercise specific personal jurisdiction over Mr. Kieffer. Plaintiff must satisfy two elements. First, that Mr. Kieffer purposefully directed his activities to California, consummated some transaction within California, or performed some act by which he purposefully availed himself of the privilege of conducting activities in California, thereby invoking the benefits and protections of California's laws. Second, Plaintiff's claims must arise out of or relate to Mr. Kieffer's forum-related activities. *See Schwarzenegger*, 374 F.3d at 801–02; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). If Plaintiff satisfies those elements, then specific personal jurisdiction is present unless Mr. Kieffer demonstrates that the Court's exercise of personal jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

### A. Purposeful Availment and Direction

"Under the first prong of the specific-jurisdiction inquiry, . . . [p]urposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). "However, our cases do not impose a rigid dividing line . . . . When both contract and tort claims are at issue, both tests are relevant. At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* Here, Plaintiff's claims sound in both contract (*e.g.*, wage claims, breach of

4

contract) and tort (*e.g.*, breach of fiduciary duty), so both tests are relevant. (Dkt. No. 8 at 11–19.)

Plaintiff relies primarily on the True-Up Agreement to show purposeful availment and direction. (Dkt. No. 20 at 14.) The Agreement was executed in 2013, (Dkt. No. 8 ¶ 29), at which point Plaintiff was a citizen of California, (*see* Dkt. No. 24 at 4 n.3). Plaintiff argues that the Agreement evinces a long-term, continuing business relationship that ties Mr. Kieffer to California. But the Agreement focused on the terms of Mr. Kieffer and Plaintiff's compensation through Summit, (Dkt. No. 8 ¶¶ 29–30), which falls short of purposeful availment or direction on Mr. Kieffer's part. "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (finding no purposeful availment where defendant made a "lone transaction for the sale of one item"). Rather, the plaintiff must show the defendant has "business activities [that] reach out beyond one state and create continuing relationships and obligations." *Id.* (citation omitted). Courts use "a highly realistic approach" to evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. In particular, the analysis does not "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 289 (2014). The "inquiry is limited to examining contacts that proximately result from actions by the defendant *himself*." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (internal quotation marks and citation omitted).

*Picot* is instructive. There, the parties made an oral agreement for the plaintiff to pay for the defendant's services. *Id.* at 1212. "The agreement was formed in Michigan, where [defendant] lived, where it was understood [defendant] would perform the majority of his work, and where [defendant] did indeed discharge most of his contractual duties." *Id.* The plaintiff argued that the defendant had minimum contacts in California because "[plaintiff], a co-party to the agreement, fulfilled his obligations under the agreement by seeking out investors and buyers in California." *Id.* at 1213. The Ninth Circuit rejected the argument: "that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Id.* Moreover, the parties' "actual course of

dealing" did not support minimum contacts; the defendant's two trips to the forum state were not envisioned in the initial agreement, "grew incidentally out of broader efforts," and had "no special place in his performance under the agreement as a whole." *Id.*

Here, the True-Up Agreement's only link to California is Plaintiff's domicile. That link does not result from actions that Mr. Kieffer himself took and thus it cannot, without more, satisfy minimum contacts. *See id.*; *Walden*, 571 U.S. at 289 ("Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections decisive in the jurisdictional analysis."); *cf. Glob. Commodities*, 972 F.3d at 1108–09 (finding minimum contacts where defendant undertook "lengthy and ongoing course" of "commodities transactions" from the forum state). "[A] defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state. . . . [I]t is the defendant's own conduct that must form the necessary connection[.]" *Cisco Sys., Inc. v. Dexon Comput., Inc.*, No. 20-cv-04926-CRB, 2021 WL 2207343, at *3 (N.D. Cal. June 1, 2021) (internal quotation marks and citations omitted).

Accordingly, Plaintiff has not made a prima facie showing of purposeful availment or direction, the first prong of the specific jurisdiction analysis.

### 1. Guiding Spirit

Under an alternative theory of personal jurisdiction, Plaintiff argues that Mr. Kieffer was the "guiding spirit" behind the conduct of Summit, which is subject to personal jurisdiction in California. "Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). However, "[c]orporate officers can be liable for corporate actions where they are the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) (internal quotation marks and citation omitted). "[T]ortious acts by corporate officers that create contact with the forum state are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the

6

1  individual." *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at
2  *7 (N.D. Cal. Jan. 5, 2009) (citing *Seagate Tech. v. A. J. Kogyo Co.*, 268 Cal. Rptr. 586 (Cal. Ct.
3  App. 1990)).
4        The complaint's allegations support a plausible inference that Mr. Kieffer was the guiding
5  spirit behind Summit's alleged tortious acts.  Plaintiff alleges that Mr. Kieffer, who owned a
6  majority stake in Summit, caused the company to withhold Plaintiff's wages for Mr. Kieffer's
7  personal financial gain.  He also alleges that, after Plaintiff had dissociated from Summit and Mr.
8  Kieffer was the sole member, Mr. Kieffer caused Summit to not pay out Plaintiff's membership
9  distribution.  Plaintiff also submits an email sent by Mr. Kieffer to Plaintiff in August 2020, which
10 includes the following:

> I feel you are being unreasonable so **here is what I am prepared to do**.
>
> **I have already instructed Lauren** to pay us the majority of the cash on hand . . . 60/40.
>
> If you do not take the offer ***I will pay us*** by our legal agreement . . . Straight 60/40 moving forward from now on. Salary & Ownership distribution. NO equalization.
> Per our contract.
> ***I will cancel your credit cards*** so you will need to use your own & submit expense reports ***for my approval***.
> If needed ***I can redirect your phone calls to the office***. . . .

19 (Dkt. No. 20-1 at 12 (emphasis by Plaintiff).)  Taken together, the complaint allegations,
20 affidavits, and email make out a prima facie showing that Mr. Kieffer was the central figure in the
21 challenged activity—the improper withholding of Plaintiff's wages and membership distribution.
22 *See Boon Glob.*, 923 F.3d at 652; *Alexis v. Rogers*, No. 15cv691-CAB-BLM, 2016 WL 11707630,
23 at *4–6 (S.D. Cal. Feb. 26, 2016) (finding guiding spirit personal jurisdiction, where defendants
24 hired, fired, drew and mailed paychecks, and sexually assaulted and harassed plaintiff); *Matsunoki*
25 *Grp., Inc. v. Timberwork Or., Inc.*, No. C 08–04078 CW, 2009 WL 1033818, at *3–5 (N.D. Cal.
26 Apr. 16, 2009) (same, where defendant had "significant if not complete control over" company
27 decisions); *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072–73 (C.D. Cal. 2004)
28 (same, where defendant had final say on company policies and plaintiff made prima facie showing

1   that defendant "personally directed, participated in, and authorized the alleged infringing
2   activity").
3          Defendants argue that *Walden* precludes personal jurisdiction over Mr. Kieffer. 571 U.S.
4   at 283–91. But *Walden* analyzed traditional purposeful availment and direction, not the "guiding
5   spirit" theory of personal jurisdiction, and the Ninth Circuit's explanation of that theory in *Boon*
6   *Global*, 923 F.3d 643, post-dates *Walden*. Moreover, the facts in *Walden* show a much more
7   attenuated relationship between the defendant and the forum state than in this case. There, the
8   defendant stopped the plaintiffs at a Georgia airport on their way home to Nevada. The defendant
9   "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to
10  Nevada. In short, when viewed through the proper lens—whether the defendant's actions connect
11  him to the forum—[he] formed no jurisdictionally relevant contacts with Nevada." *Walden*, 571
12  U.S. at 289. The defendant's only connection to Nevada was that the plaintiffs had experienced
13  harm there as a result of the defendant's actions in Georgia. Here, by contrast, there is a prima
14  facie showing that Mr. Kieffer conducted business with Plaintiff (who was in California) over a
15  period of years and directed Summit (a California citizen) to withhold monies that would
16  necessarily harm Plaintiff in California. *E.g.*, *Atkins v. Calypso Sys., Inc.*, No. CV-14-02706-
17  PHX-NVWD, 2015 WL 5856881, at *5, 7 (D. Ariz. Oct. 8, 2015) (distinguishing *Walden*).
18         Accordingly, there is a prima facie showing that Mr. Kieffer was the guiding spirit behind
19  Summit's alleged wrongful conduct of withholding Plaintiff's pay and distribution; Summit's
20  contacts with California (including that it was a California citizen until Plaintiff resigned earlier
21  this year) can be imputed to Mr. Kieffer for personal jurisdiction purposes. The Court cautions
22  that it is not holding that it has personal jurisdiction of Mr. Kieffer merely because he was a
23  member of an LLC that also had a California member; rather, it is because the allegations support
24  a prima facie showing that Mr. Kieffer was the guiding spirit behind the LLC's alleged wrongful
25  conduct directed at its California member.
26         **2.    Alter Ego**
27         Plaintiff also contends that specific personal jurisdiction exists under an alter ego theory.
28  California recognizes the theory "where two conditions are met: First, where there is such a unity

of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice."[4]  *Boon Glob*, 923 F.3d at 653.  "Alter ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000).

Plaintiff does not allege facts that suggest fraud or injustice if Mr. Kieffer is not subjected to personal jurisdiction based on his use of Summit's corporate form.  He does allege that, in August 2020, Mr. Kieffer caused Summit to be undercapitalized "for at least a period of time" by directing an improper cash distribution.  (Dkt. No. 8 ¶ 15.)  But that does not suggest that Plaintiff would have any present difficulty enforcing a judgment against Summit or that injustice would result if Mr. Kieffer "hide[s] behind the corporate form."  *Sonora Diamond*, 99 Cal. Rptr. 2d at 837.  Accordingly, Plaintiff has not made a prima facie showing that Mr. Kieffer and Summit were alter egos in order for the Court to exercise personal jurisdiction over Mr. Kieffer.

### B. Claims Arising Out of Forum-Related Activities

Plaintiff's claims arise out of Mr. Kieffer's forum-related activities as the guiding spirit behind Summit.  *See Schwarzenegger*, 374 F.3d at 801–02.  But for Mr. Kieffer's causing Summit to withhold monies, Summit—then a California citizen—would not have injured Plaintiff in California.  *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995).

### C. Reasonableness

Because the first and second prongs of specific personal jurisdiction are met, then the Court may exercise personal jurisdiction over Mr. Kieffer unless Defendants demonstrate that doing so would be unreasonable.  *Schwarzenegger*, 374 F.3d at 802.  Defendants must present a "compelling case" based on the seven factors derived from *Burger King*.  471 U.S. at 477; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

---

[4] The parties agree that the tests under California and Wisconsin law are interchangeable here. (Dkt. No. 19-1 at 15–16; Dkt. No 20 at 17–18); *see Consumer's Co-op. of Walworth Cnty. v. Olsen*, 419 N.W.2d 211, 218 n.5 (Wis. 1988); *see also Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1126–30 (N.D. Cal. 2011) (performing alter ego choice of law analysis).

9

Defendants have not met that burden. First, the extent of interjection into the forum state was moderate. *See Ziegler*, 64 F.3d at 475; *see also Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (suggesting that where purposeful availment or an alternative theory is satisfied, then analysis of first reasonableness factor is "redundant"). Second, Mr. Kieffer's burden of litigating in California is equal to Plaintiff's burden of litigating elsewhere, weighing slightly against jurisdiction. *See Ziegler*, 64 F.3d at 475. The third and fourth factors counterbalance one another. *See id.* Although Wisconsin has a sovereignty interest in disputes related to LLCs that are located in and citizens of Wisconsin, the forum state has a countervailing interest because Summit and Plaintiff were also citizens of California. Moreover, Plaintiff's claims arise under the laws of both states. Fifth, efficient resolution of the controversy weighs slightly against jurisdiction because witnesses and evidence may be located in Wisconsin, although much of the evidence is likely store electronically. *See id.* at 475–76. Sixth, Plaintiff's interest in convenient and effective relief weighs slightly, if at all, in favor of jurisdiction; there is no indication that relief would be unavailable to Plaintiff in Wisconsin. *See id.* at 476. Seventh, likewise, an alternative forum exists. *See id.* In sum, factors 1, 4, and 6 weigh slightly in favor of jurisdiction while factors 2, 3, 5, and 7 weigh slightly against. Thus, Defendants have not presented a "*compelling* case" to rebut the "presumption" that the exercise of personal jurisdiction over Mr. Kieffer is reasonable. *Roth*, 942 F.2d at 625.

Accordingly, the Court may exercise personal jurisdiction over Mr. Kieffer consistent with the requirements of due process. Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

## II.     Transfer

In the alternative, Defendants ask the Court to transfer this case to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a). Section 1404(a) permits transfer "to any other district or division where [the case] might have been brought," subject to the court's "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). Plaintiff does not dispute that his claims could have been brought in the Eastern District of Wisconsin.

Defendants argue that the following factors related to convenience and fairness weigh strongly in favor of transfer: convenience of the parties; convenience of witnesses; ease of access to evidence; local interest in the controversy; and differences in the cost of litigation in the two forums. *See Jones v. GNC Franchising*, 211 F.3d 495, 498–99 (9th Cir. 2000). Given the practical realities of this case, which is essentially a business dispute between a person who lives in California and a person who lives in Wisconsin, there is no apparent fairness or justice interest in transferring the case from one state to the other. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("[T]ransfer would merely shift rather than eliminate the inconvenience."). While Summit's office is in Wisconsin, Defendants have not rebutted Plaintiff's assertion that most if not all of the relevant records are stored electronically and could be accessed anywhere. (Dkt. No. 20-1 ¶¶ 7–8.) Nor have they explained with particularity which witnesses, if any, they expect will be called on to participate in this case and who would be inconvenienced by litigating in California. (*See id.* ¶ 9.)

Accordingly, the Court finds that transfer is not in the interests of justice.

## CONCLUSION

For the reasons explained above, the Court DENIES Defendants' partial motion to dismiss for lack of jurisdiction and declines to transfer venue.

This Order disposes of Docket No. 19.

**IT IS SO ORDERED.**

Dated: November 19, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge